UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D
MAY - 4 2010
J. T. NOBLIN, CLERK
BY_____DEPUTY

STACEY VAN DUYN,
CHARLES KNIGHT, and
MARGARET ANN BRAME;
Individually and on behalf
of all others similarly situated

PLAINTIFFS

VS.

CAUSE NO. 1:10CV183 HSO-JMR

CAMERON INTERNATIONAL CORPORATION
f/k/a COOPER CAMERON CORPORATION; BP, PLC;
BP PRODUCTS NORTH AMERICA, INC.;
BP AMERICA, INC.; TRANSOCEAN, LTD.;
TRANSOCEAN OFFSHORE DEEPWATER
DRILLING, INC.; TRANSOCEAN DEEPWATER, INC.;
HALLIBURTON ENERGY SERVICES, INC.;
HYUNDAI HEAVY INDUSTRIES CO., LTD.;
MITSUI & CO. (U.S.A.), INC.; ANADARKO
PETROLEUM CORPORATION; and
JOHN DOE # 1-100

DEFENDANTS

## CLASS ACTION COMPLAINT

1. Plaintiff STACEY VAN DUYN, CHARLES KNIGHT, and MARGARET ANN BRAME, individually and as representatives of the class defined herein (the "Class"), brings this action against the defendants identified below ("Defendants"), and aver as follows:

### INTRODUCTION

2. This is a class action, brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, to recover damages suffered by Plaintiffs and the Class Members resulting from the oil spill that occurred following an explosion and fire aboard the Deepwater Horizon on April 20, 2010. It is estimated that up to 25,000 barrels of crude oil have leaked from the well into the Gulf per day since the explosion and continuing with no end in sight. The resulting oil slick has expanded to exceed 5,000 square miles, and has already begun damaging the marine life that

occupies that area of the Gulf of Mexico. The damage caused is only beginning, and the extensive effects of the damage will not been known for some time. The areas currently being inundated with oil are some of the most widely used fishing and recreational portions of the entire Gulf of Mexico.

## PARTIES

3.  Plaintiff, Margaret Ann Brame, lives on the beach of Mississippi, and, as a result of the event described herein, she has suffered damages that are more fully described below.

4.  Plaintiff, Stacey Van Duyn, is a citizen of Mississippi who resides within the district in Gulfport in Harrison County, Mississippi. Plaintiff Van Duyn lives within one mile of the coastline/beach of Mississippi, and, as a result of the event described herein, she has suffered damages that are more fully described below.

5.  Plaintiff, Charles Knight, is a citizen of Mississippi who resides within the district in Gulfport in Harrison County, Mississippi. Plaintiff Knight lives within the "Coastal Zone" of Mississippi, and, as a result of the event described herein, she has suffered damages that are more fully described below.

6.  Defendants herein are:

(a)  BP Products North America, Inc. (hereinafter "Defendant BP Products") is an unlicensed foreign corporation who has committed a tort in whole or in part within the State of Mississippi and may be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule 4;

(b)  BP America, Inc., (hereinafter "Defendant BP America") is an unlicensed foreign corporation who has committed a tort in whole or in part within the State of Mississippi and may

be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule 4;

(c)   Halliburton Energy Services, Inc., (hereinafter "Defendant Halliburton") is an unlicensed foreign corporation who has committed a tort in whole or in part within the State of Mississippi and may be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule 4;

(d)   Transocean, Ltd., (hereinafter "Defendant Transocean Ltd") is an unlicensed foreign corporation who has committed a tort in whole or in part within the State of Mississippi and may be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule 4;

(e)   Transocean Offshore Deepwater Drilling, Inc., (hereinafter "Defendant Transocean Offshore") is an unlicensed foreign corporation who has committed a tort in whole or in part within the State of Mississippi and may be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule 4;

(f)   Transocean Deepwater, Inc., (hereinafter "Defendant Transocean Deepwater" is an unlicensed foreign corporation who has committed a tort in whole or in part within the State of Mississippi and may be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule 4;

(g)   BP, Plc, (hereinafter "Defendant BP Plc") is an unlicensed foreign corporation who has committed a tort in whole or in part within the State of Mississippi and may be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule4;

(h)   Cameron International Corporation f/k/a Cooper-Cameron Corporation, (hereinafter "Defendant Cameron") is a foreign corporation licensed to do business in the State

of Mississippi and within the district, where process may be served upon its instate agent CT Corporation System located at 645 Lakeland East Drive, Suite 101, Flowood, MS 39232;

(i) Hyundai Heavy Industries Co., Ltd., (hereinafter "Defendant Hyundia") is an unlicensed foreign corporation who has committed a tort in whole or in part within the State of Mississippi and may be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule 4;

(j) Mitsui & Co. (U.S.A.), Inc., (hereinafter "Defendant Mitsui") is an unlicensed foreign corporation who has committed a tort in whole or in part within the State of Mississippi and may be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule 4;

(k) Anadarko Petroleum Corporation, (hereinafter "Defendant Anadarko") is a foreign corporation licensed to do business in the State of Mississippi and within the district, who has committed a tort in whole or in part within the State of Mississippi, where process may be served upon its instate agent C T Corporation System located at 645 Lakeland East Dr Ste 101 Flowood, MS 39232.

(l) John Does # 1-100 are individuals and/or business entities whose names are not yet known to the Plaintiffs, who have committed a tort in whole or in part within the State of Mississippi, and may be served with process by any means provided for by the Federal Rule of Civil Procedure, Rule 4;

**JURISDICTION AND VENUE**

7. Jurisdiction is proper in this Court over this class action subject matter pursuant to:

(a) 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and cost, and it is a class action brought by citizens of a State that is different form the State where at least one of the Defendants is incorporated or does business;

(b) 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America, including the laws of the State of Mississippi which have been declared, pursuant to 43 U.S.C. §§ 1331 (f)(1) and 1333(a)(2), to be the law of the United States for that portion of the Outer Continental Shelf from which the oil spill originated; and

(c) 43 U.S.C. § 1331(e), which extends exclusive Federal Jurisdiction to the outer Continental Shelf.

8. This Court has personal jurisdiction over the parties pursuant to Miss Code. Ann. § 13-3-57 and moreover, the Defendants have such contact with the forum Court so that maintenance of this suite against these Defendants does not offend traditional notions of fair play and substantial justice.

9. Prosecution of this action in this district is proper under 28. U.S.C. § 1391(a)(2) because all the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTS

10. Defendant BP are the holders of a lease granted by the Minerals Management Service that allows BP to drill for oil and perform oil-production related operations at the site of the oil spill, and at all relevant times operated the oil well that is the source of the oil spill.

11. Defendant Transocean, Ltd, Defendant Transocean Offshore, and Defendant Transocean Deepwater (collectively "Defendant Transocean") are the owners and/or operators of the Deepwater Horizon, a semi-submersible mobile drilling rig, which was performing completion operations for Defendant BP, Defendant BP Products, and Defendant BP America (Collectively "Defendant BP") on the outer Continental Shelf, at the site from which the oil spill originated, on April 20, 2010.

12. Upon information and belief, Defendant Cameron manufactured and/or supplied the Deepwater Horizon's blow-out-prevention ("BOP") that failed to operate upon the explosion, which should have prevented the oil spill. The BOP's were defective because they failed to operate as intended. Therefore, Defendant Cameron is liable to Plaintiffs and the Class Members pursuant to Miss. Code Ann. § 11-1-63 in addition to being liable for its negligence.

13. At all times relevant hereto, Defendant Halliburton was engaged in cementing operations of the well and well cap and, improperly and negligently performed these duties, increasing the pressure at the well and contributing to the fire, explosion and resulting oil spill.

14. At all times relevant hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered and/or otherwise operated by Defendant Transocean and/or Defendant BP.

15. Defendant Hyundai designed and manufactured the Deepwater Horizon.

16. Defendant Hyundai negligently designed and defectively manufactured the Deepwater Horizon which directly and proximately caused the fire and explosion that ultimately caused the sinking of the oil rig, resulting in the oil spill. As such, Defendant Hyundai is liable to Plaintiffs and the Class of Members pursuant to Miss. Code. Ann. § 11-1-63, in addition to being liable for its negligence.

17. The fire and explosion on the Deepwater Horizon, its sinking and the resulting oil spill were caused by the Negligence of Defendants, which renders them liable jointly, severally and *in solido* to Plaintiffs and the Class Members for all their damages.

18. The injuries and damages suffered by Plaintiffs and the Class Members were caused by Defendants' violations of numerous statues and regulations, including but not limited to, statutes and regulations issued by OSHA and the United States Coast Guard, including the requirement to test the sub-sea BOP's at regular intervals.

19. Defendants knew of the dangers associated with deep water drilling and failed to take appropriate reasonable measures to prevent damages to Plaintiffs and the Class Members, Mississippi's and the Gulf of Mexico's marine and coastal environments and estuarine areas, and the Costal Zone, where Plaintiffs and the Class Members live.

20. The spilled oil has affected Plaintiffs and the Class Members and will continue to do so for the foreseeable future, because the oil will not simply evaporate off the water or the shoreline further affecting the Mississippi Gulf Cost's sensitive wetlands and estuarine area including the marine wildlife.

21. There are many other potential affects from the oil spill that have not yet become known, and Plaintiffs reserve the right to amend this Complaint once additional information becomes available.

## CLASS DEFINITION

22. Plaintiffs bring this action on behalf of herself and all others similarly situated, who are members of the following Class:

> All Mississippi residents who live or reside in the Mississippi "Coastal Zone," as that term is defined in 43 U.S.C. 1331 (e), and as a result of the April 20, 2010, fire and explosion of the Deepwater Horizon drill rig and resulting oil spill, have suffered

damages in the form of loss of enjoyment of life due to the inability to quietly enjoy the natural beauty and use the beaches of Mississippi or any legally cognizable damages.

The class definition above can be subdivided into subclasses based off proximity to the beach; to include:
1. Properties that will be or have been soiled or contacted by the oil,
2. Plaintiffs with home and properties within one (1) mile of the beach excluding Plaintiffs in subcategory #1 above,
3. Plaintiffs that homes and properties within the Mississippi "Coastal Zone" excluding Plaintiffs in subcategories # 1 and 2 above.

23. Plaintiffs that have homes and properties within the Mississippi "Coastal Zone" who are excluded from the Class are:

   a. the officers and directors of any of the Defendants;

   b. any judge or judicial officer assigned to this matter and his or her immediate family; and

   c. any legal representative, successor, or assign of any excluded persons or entities.

## CLASS ACTION ALLEGATIONS

A. **Numerosity of the Class.**

24. The proposed Class is so numerous that joinder is impractical. The disposition of the claims asserted herein trough this class action will be more efficient and will benefit the parties and the Court.

B. **Predominance of Common Questions of Fact and Law.**

25. There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individuals Class Members and include, but are not limited to, the following:

   a. Whether Defendants caused and/or contributed to the fire, explosion and resulting oil spill;

   b. Whether Defendants' actions were negligent;

   c. Whether the fire, explosion and resulting oil spill have caused environmental or other damages; and

   d. The amount of damages Plaintiff and Class Members should receive in compensation.

**C. Typicality.**

26.   The Plaintiffs and Class Members have suffered similar harm as a result of Defendant's actions.

**D. Adequacy of Representation.**

27.   The Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class because their interest do not conflict with the interest of the Class Members they seek to represent. The Plaintiffs has no claims antagonistic to those of the Class, Plaintiffs has retained counsel competent in complex class actions and maritime and environmental litigation.

**E. Superiority.**

28.   A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impractical. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the prospect of a race for the courthouse and an inequitable

allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all claims related to the Defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

29. The various claims asserted in the action are also certifiable under the provision of Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

(a) The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for Defendants;

(b) The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interest of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interest; and

(c) The questions of law or fact in common to the Members of the Class predominate over any questions affecting only individual Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CAUSE OF ACTION

**A. Negligence of the Defendants.**

30. Plaintiffs incorporate by reference each and every averment made in the paragraphs above.

31. The fire, explosion and resulting oil spill was caused by the concurrent negligence of the Defendants jointly and severally.

32. Upon information and belief, Plaintiffs avers that the fire, explosion and resulting oil spill was caused by the joint negligence and fault of the Defendants in the following non-exclusive particulars:

   a. Failing to properly operate the Deepwater Horizon in a safe and reasonable manner;

   b. Failing to properly inspect the Deepwater Horizon and related equipment were fit for their intended purpose;

   c. Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operation of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

   d. Failing to take appropriate action to avoid and/or mitigate the accident;

   e. Careless and negligence conduct without due regard for the safety of others;

   f. Negligently operating the Deepwater Horizon and other equipment in such a manner that a fire, explosion, and sinking of the oil platform resulting in an oil spill;

   g. Operating the Deepwater Horizon by untrained and unlicensed personnel;

h.  Inadequate and negligent hiring, training, and supervision of personnel;

i.  Employing untrained or poorly trained employees and failing to properly train their employees;

j.  Negligent implementation of policies and procedures to safely conduct offshore operations in the coastal waters of Mississippi;

k.  Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

l.  Failure to timely warn;

m.  Failure to timely bring the oil release under control;

n.  Failure to provide appropriate accident prevention and safety equipment;

o.  Failure to observe and read gauges that would have indicated excessive pressure in the well;

p.  Failure to react to danger signs;

q.  Improperly conducting well and well cap cementing operations;

r.  Failing to avoid the accident;

s.  Acting with a willful and wanton disregard for the safety of others as to justify imposition of punitive damages;

t.  Failing to properly design the vessel, the BOP and other related equipment and materials;

u.  Failing to properly manufacture the vessel, the BOP and other related equipment and materials; and

v.  Installing and/or operating defective BOP's;

      w. Such other acts of negligence and omissions as will be shown at the trial of this matter; all of which acts are in violation of the laws of Mississippi and Federal law applicable on the outer Continental Shelf.

33. In addition, and in the alternative, the fire, explosion, sinking and resulting oil spill were caused by defective equipment, including the BOP's, which were in the care, custody, and control of the Defendants and over which the Defendant had watch.

34. Defendants knew or should have known of these defects and Defendants are, therefore liable for the loss of enjoyment of life due to the inability to quietly enjoy the natural beauty and use the beaches of Mississippi suffered by Plaintiffs.

35. The injuries to Plaintiffs and the Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations, and but for the acts or omissions of the Defendants, Plaintiffs damages would have been avoided.

36. In addition to the negligent actions described above, and in the alternative thereto, the injuries and damages suffered by Plaintiffs and the Class Members were caused by the acts and/or omissions of the Defendants that are beyond proof by Plaintiffs and the Class Members, but which were within the knowledge and control of the Defendants, there being no other possible conclusion that the fire, explosion, sinking and resulting oil spill would not have occurred had the Defendants exercised the high degree of care imposed on them, and Plaintiff therefore pleads the doctrine of *res ipsa loquitur*.

37. Plaintiffs and the Class of Members are entitled to a judgment finding Defendants liable to the Plaintiffs and the Class Members for damages suffered as a result of Defendants'

negligence and awarding the Plaintiffs and the Class Members adequate compensation in an amount to be determined by the trier of fact.

**B. Negligence Per Se.**

38. Plaintiffs incorporate by reference each and every averment made in the paragraphs above.

39. The type of conduct by the Defendants, specifically operating an oil well, is of the kind and manner that is inherently dangerous, because the great dept of the ocean at the drilling site and the extreme pressures of the oil.

40. It is foreseeable that the fire, explosion, and subsequent sinking of the oil drilling platform, could potentially pose great risk to the personnel aboard the drilling platform, including but not limited to the spilling of oil into the ocean where the oil platform is operating.

41. The fire, explosion, and subsequent sinking of the Deepwater Horizon did result in such spilling of oil into the waters surrounding the oil platform; therefore the Defendants are strictly liable for the tort damages suffered by Plaintiffs and the Class members.

**C. Violation of the Oil Pollution Act by Defendant BP.**

42. Plaintiffs incorporate by reference each and every averment made in the paragraphs above.

43. The Oil Pollution Act imposes liability upon a "responsible party for a..facility from which oil is discharged…into or upon navigable waters or adjoining shorelines" for the "damages that result from such incident." 33 U.S.C. § 2702.

44. Section 2702(b)(2)(C) provides for the recovery of "[d]amages for subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources

which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

45.  The Coast Guard has named Defendant BP as the responsible party. Therefore, BP is liable pursuant to Section 2702 for all the damages that results from the oil spill.

46.  As a result of the oil spill, Plaintiffs and the Class Members have not been able to use natural resources (air and water, and potentially wetlands and other areas and spaces that have and/or may become contaminated by the spilled oil) for their subsistence, and they are entitled to recover from Defendant BP for such damages in amounts to be determined by the trier of fact.

47.  Section 2702(b)(2)(E) provides for the recovery of "[d]amages equal to the loss of profits or impairment of earning capacity due to injury, destruction, or loss of real property, personal property, or natural resources, which shall be recoverable by any claimant."

48.  As a result of the oil spill, Plaintiffs and the Class Members have suffered the type of damages that may be recoverable pursuant to Section 2710(b)(2)(E), and they demand compensation therefore from Defendant BP in amounts to be determined by the trier of fact.

**D. *Respondeat Superior* of the Defendants**

49.  Plaintiffs incorporate by reference each and every averment made in the paragraphs above.

50.  At all relevant times hereto, John Doe # 1-100 were employees of the Defendants, and were acting within there scope their duties.

51.  Defendant John Doe # 1-100's employment was by mutual consent between the Defendants, was performed for the benefit of the Defendants, and was subject to overall supervision and control by Defendants.

52. Therefore, the Defendants are vicariously liable individually, as well as jointly, for all of the actions, omissions and negligence of its agents, servants, representatives and employees.

## **DAMAGES**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs and the Class Members demand judgment against Defendants, jointly, severally, and *in solido*, as follows:

1. An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein;

2. Appointing Plaintiffs as Class Representatives; and appointing undersigned counsel as counsel for the Class;

3. Economic and compensatory damages in amounts to be determined at trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which establishes on of this Court's bases of jurisdiction to hear this case;

4. Punitive damages;

5. Pre-judgment and post-judgment interest at the maximum rate allowable by law;

6. Attorneys' fees and cost of litigation;

7. A trial by jury as to all Defendants, and

8. Such other and further relief available under all State and Federal laws and any relief the Court deems just and proper.

THIS the 4th day of May, 2010

STACEY VAN DUYN,<br>
CHARLES KNIGHT, and<br>
MARGARET ANN BRAME, Plaintiffs<br>
<br>
Respectfully submitted,<br>
<br>
BY: _____<br>
Darryl M. Gibbs

OF COUNSEL:

Darryl M. Gibbs, (MSB# 100232)
Rogen K. Chhabra (MSB #99131)
Chhabra & Gibbs, P.A.
120 North Congress Street, Suite 200
Jackson, Mississippi 39201
P: (601) 948-8005
F: (601) 948-8010